UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CLARENCE MATHEWS,

                    Petitioner,

-vs-                                                        Case No.  8:08-cv-512-T-17MAP

SECRETARY, DEPT. OF CORRECTIONS,

                    Respondent.

_____

## O R D E R

Before this Court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by Clarence Mathews, a Florida prisoner. Mathews challenges his convictions for Sexual Battery and Violation of a Domestic Injunction arising out of charges filed in the Thirteenth Judicial Circuit, Hillsborough County, Florida, in state circuit case number 01-2594.   A review of the record demonstrates that, for the following reasons, the petition must be denied.

PROCEDURAL HISTORY

On March 5, 2001, the State Attorney filed an Information charging Mathews with two counts of sexual battery with slight force and two counts of violating a domestic violence injunction, one count that involved contact and one count that included an act of violence. (Exh 29: Vol. 1: R 16-17).[1] Mathews was initially represented by the Public Defender's Office, but the office withdrew because of conflict and attorney Robert Fraser

_____

[1] Respondent filed the five-volume record on direct appeal as Respondent's Exhibit 29.

was appointed to represent Mathews. The case proceeded to trial before the Honorable

Jack Espinosa, Jr., Circuit Judge, on February 13, 2002. The jury returned a not guilty

verdict on one charge of sexual battery, but found Mathews guilty of one count of sexual

battery and both counts of violating a domestic violence injunction. (Exh 29: Vol. 1: R 135-

136).

On March 1, 2002, the court sentenced Mathews as a Prison Releasee Reoffender

to fifteen years imprisonment on the sexual battery count and one year imprisonment on

each of the violation of domestic violence injunction counts, with all sentences to run

concurrently.  (Exh 29: Vol. 1: R 169-173).

**Direct Appeal**

Mathews pursued a direct appeal. Mathews' appointed counsel, Special Assistant

Public Defender Pamela H. Izakowitz, filed an initial brief (Exhibit 1) raising three issues:

Issue I

THE TRIAL COURT ERRED IN PROHIBITING MR. MATHEWS FROM
TESTIFYING THAT HIS PRIOR CONVICTIONS DID NOT INVOLVE SEX
OR VIOLENCE BUT WERE DRUG RELATED. FAILURE TO ALLOW THIS
INFORMATION TO BE PRESENTED VIOLATED MR. MATHEWS' RIGHTS
TO A FAIR TRIAL.

Issue II

THE TRIAL COURT ERRED IN IMPROPERLY RESTRICTING THE
DEFENSE FROM PRESENTING EVIDENCE THAT REGINA MATHEWS
APPEARED AT A BOND HEARING AND PROVIDED FUNDS TO MR.
MATHEWS' LAWYER. SUCH EVIDENCE WENT TO MRS. MATHEWS'
BIAS AND WAS MORE PROBATIVE THAN PREJUDICIAL AND SHOULD
HAVE BEEN ALLOWED. MR. MATHEWS IS ENTITLED TO A NEW TRIAL.

Issue III

THE TRIAL COURT ERRED IN FAILING TO GRANT THE DEFENSE
MOTION FOR MISTRIAL AFTER THE STATE PRESENTED EVIDENCE OF

2

A CONVERSATION THAT ALLEGEDLY OCCURRED BETWEEN MR. MATHEWS AND HIS WIFE. THIS WAS A RICHARDSON VIOLATION THAT VIOLATED MR. MATHEWS' RIGHTS. MR. MATHEWS IS ENTITLED TO A NEW TRIAL.

The State filed its answer brief (Exhibit 2), and Mathews filed a reply brief. (Exhibit 3). On February 21, 2003, in Case No. 2D02-1601, the Second District Court of Appeal filed a per curiam unwritten opinion affirming Mathews' convictions and sentences. (Exhibit 4). *Mathews v. State*, 847 So. 2d 471 (Fla. 2d DCA 2003)[Table]. The mandate was issued on March 13, 2003. (Exhibit 5).

### Rule 3.850 Motion for Postconviction Relief

On July 9, 2003, Mathews, pro se, filed a Motion for Postconviction Relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure raising the following four grounds for relief:

1. Ineffective assistance of trial counsel.

> A. Ineffective assistance of counsel for failing to contact and call Jeannette Williams and Lashon Williams as witnesses during his trial. (Vol. 1, P. 122-123, 131-136).
>
> B. Ineffective assistance of counsel for failing to sever two domestic violence violation charges from two sexual battery charges.
>
> C. Ineffective assistance of counsel for failing to move to exclude taped telephone calls between the defendant and the victim.
>
> D. Ineffective assistance of counsel for failing to request a circumstantial evidence jury instruction.

2. The defendant was denied a fair trial by an impartial jury when

> A. The Court failed to excuse juror number 4 for cause.
>
> B. The defendant was denied a fair trial by an impartial jury

where the Court failed to excuse juror number 5 for cause.

3. The Defendant was denied a fair trial due to prosecutorial misconduct during closing arguments. (Vol. 1, P. 116-162).

4. The trial court lacked jurisdiction to impose a sentence on the Appellant for violating Section 794.011(5) Fla. Stat, which had been declared unconstitutional by *Taylor v. State*, 818 So. 2d 544 (Fla. 2d DCA 2002). (Vol. 1, P. 164-167).

(Exhibit 6)

On April 15, 2004, the state trial court summarily denied grounds 1B, 1D, 2A, 2B, 3, and 4, and directed the State to respond to grounds 1A and 1C. (Exhibit 7). The State filed its response on June 7, 2004, conceding that an evidentiary hearing was appropriate as to ground 1A of the Rule 3.850 motion, but arguing that ground 1C should be summarily denied. (Exhibit 8).

On June 9, 2004, the state trial court issued an order granting an evidentiary hearing on ground 1A, and summarily denying ground 1C. (Exhibit 9). On September 23, 2004, Mathews filed a supplement to the motion for postconviction relief (Exhibit 10) adding six grounds for relief:

1E   Ineffective assistance of counsel due to counsel's failure to challenge for cause the impanelment of juror #4, William Rosas, thereby denying Defendant his right to a fair trial by an impartial jury.

1F   Ineffective assistance of counsel due to counsel's failure to move for a mistrial when the court asked all prospective jurors if they recognized the names of any State or defense witnesses and to identify the witness' name that they recognized and no juror did so.

1G   Ineffective assistance of counsel due to counsel's failure to object to improper prosecutorial comments during closing arguments.

1H     Ineffective assistance of counsel due to counsel's failure to object to the court's failure to swear the panel of prospective jurors under oath prior to voir dire.

1I     Ineffective assistance of counsel due to counsel's failure to present exculpatory evidence in the form of transcripts of telephonic communications between Defendant and the alleged victim which tended to refute the alleged hostilities between Defendant and the victim as alleged by the State, as well as the alleged victim's unwillingness to assist in exonerating Defendant.

5. The Department of Corrections' letter, used to sentence Defendant as a Prison Releasee Reoffender, was never submitted to Defendant's jury during the fact finding process in violation of *Blakely v. Washington*, — U.S. — , 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

On October 28, 2004, the state trial court summarily denied grounds 1G and 5, and directed the State to respond to grounds 1E, 1F, 1H, and 1I. (Exhibit 11). The State filed its response on November 29, 2004, requesting the court to deny the four grounds without a hearing. (Exhibit 12).

However, the state trial court did not grant the State's request, and on December 13, 2004, the state trial court granted an evidentiary hearing on grounds 1E, 1F, 1H, and 1I. (Exhibit 13). On December 5, 2004, Mathews filed another supplement to the motion for postconviction relief, adding ground 1J, which alleged that trial counsel was ineffective for failing to investigate adequately potential witness Rhonda Hall in order to support and bolster Mathews' defense of consensual sex. (Exhibit 14). On January 5, 2005, the state trial court granted an evidentiary hearing on this claim. (Exhibit 15).

On May 2, 2005, the evidentiary hearing was held before the Honorable Wayne S. Timmerman, Circuit Judge. (Exhibit 16). Mathews was represented by Assistant Public Defender Michelle Florio. The court heard the testimony of Petitioner Clarence Mathews

5

and trial counsel, Bob Fraser. In addition, the court heard from witnesses Lashon Williams, Rhonda Hall, Richard Bracewell, and Rita Newman. On May 8, 2006, the state trial court issued a final order denying grounds 1E, 1F, 1H, 1I, and 1J of Petitioner's supplemental motions for postconviction relief. (Exhibit 17).

Mathews appealed the adverse rulings. (Exhibit 18). On January 18, 2007, Mathews' appointed counsel, Special Assistant Public Defender James C. Banks, filed an initial brief raising one issue:

> WHETHER THE TRIAL COURT ERRED IN FAILING TO ADDRESS THE APPELLANT'S CLAIM FOR RELIEF (GROUND 1A AND PART OF GROUND 1J) IN AN ORDER DENYING RELIEF ON THE APPELLANT'S MOTION FOR POST CONVICTION RELIEF.

(Exhibit 18). Because the state trial court had failed to address ground 1A in its final order denying relief, the State moved to relinquish jurisdiction to the state trial court for a written disposition of that claim. (Exhibit 19). The Second District Court of Appeal granted the motion to relinquish jurisdiction. (Exhibit 20). On May 15, 2007, the state trial court entered an "Order Denying Defendant's Motion for Postconviction Relief" which addressed the issues presented in grounds 1A and 1J. (Exhibit 21). Thereafter, Mathews' appellate counsel filed an *Anders* brief which presented no issues for the appellate court's consideration, stating, "Since the trial court corrected the only issues raised by the initial brief, the undersigned is filing a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967)." (Exhibit 22 at page 8). The state district court of appeal filed an *Anders* order on July 27, 2007, inviting Mathews to file a pro se brief.

According to the state district court of appeal docket, this notice was returned as undeliverable, and the court issued a new order on August 7, 2007, requiring that Mathews

6

file a pro se brief, if he chose to do so, by September 13, 2007. Mathews did not file a pro se brief. (Exhibit 23: Docket). On September 18, 2007, the State filed an *Anders* brief.

On November 19, 2007, Mathews filed a notice of change of address in the state district court of appeal. On January 30, 2008, in Case No. 2D06-2416, the state district court of appeal filed a per curiam affirmance of the state trial court's denial of the motions for postconviction relief. (Exhibit 24). *Mathews v. State*, 973 So. 2d 1137 (Fla. 2d DCA 2008)[table]. The mandate was issued by the state district court of appeal on February 20, 2008. (Exhibit 25).

### State Petition for Writ of Habeas Corpus

On October 13, 2004, Mathews filed a petition for writ of habeas corpus in the Second District Court of Appeal alleging ineffective assistance of appellate counsel. On February 17, 2005, Mathews filed an amended petition pursuant to court order. (Exhibit 27). On March 21, 2005, in Case No. 2D04-4548, the state district court of appeal denied the petition for writ of habeas corpus, without discussion. (Exhibit 28). *Mathews v. State*, 902 So. 2d 151 (Fla. 2d DCA 2005)[table].

### The Present Petition

Mathews timely signed the 28 U.S.C. § 2254 petition on March 14, 2008. (Doc. 1). The Court has identified fifteen grounds Mathews raises in the petition:

### Ground One

PETITIONER WAS DENIED A FAIR TRIAL WHEN THE TRIAL COURT ERRONEOUSLY PROHIBITED PETITIONER'S COUNSEL FROM ASKING THE SPECIFIC QUESTION HE SOUGHT TO ASK PETITIONER ABOUT HIS PRIOR RECORD.

### Ground Two

PETITIONER WAS DENIED A FAIR TRIAL WHEN THE TRIAL COURT ERRONEOUSLY LIMITED TESTIMONY ABOUT RELEVANT MATTERS.

### Ground Three

PETITIONER WAS DENIED A FAIR TRIAL WHEN THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING PETITIONER'S MOTION FOR MISTRIAL.

### Ground Four

TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO CALL AS DEFENSE WITNESSES LASHON WILLIAMS AND JEANETTE WILLIAMS.

### Ground Five

TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO MOVE FOR A SEVERANCE OF COUNTS III AND IV OF THE INFORMATION WHEN THESE CHARGES WERE IN NO WAY TIED TO THE UNDERLYING OFFENSES AND PREJUDICED PETITIONER'S RIGHT TO A FAIR TRIAL WITH RESPECT TO COUNTS I AND II.

### Ground Six

TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO FILE A MOTION IN LIMINE IN ORDER TO EXCLUDE THE TAPES OF TELEPHONIC CONVERSATIONS BETWEEN PETITIONER AND THE ALLEGED VICTIM AS WELL AS TESTIMONY RELEVANT TO THE SAME.

### Ground Seven

TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO REQUEST A SPECIAL JURY INSTRUCTION ON CIRCUMSTANTIAL EVIDENCE WHEN THE STATE'S ENTIRE CASE WAS BASED UPON CIRCUMSTANTIAL EVIDENCE.

### Ground Eight

TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO CHALLENGE FOR CAUSE THE IMPANELMENT OF JUROR #4, WILLIAM ROSAS, THEREBY DENYING PETITIONER HIS RIGHT TO A FAIR TRIAL BY AN IMPARTIAL JURY.

### Ground Nine

TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO MOVE FOR A MISTRIAL WHEN THE COURT ASKED ALL PROSPECTIVE JURORS IF THEY RECOGNIZED THE NAMES OF ANY OF THE STATE OR DEFENSE WITNESSES AND TO IDENTIFY THE WITNESS'S NAME THAT THEY RECOGNIZED AND NO JUROR DID SO.

### Ground Ten

TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO IMPROPER PROSECUTORIAL COMMENTS DURING CLOSING ARGUMENT.

### Ground Eleven

TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO OBJECT TO THE COURT'S FAILURE TO SWEAR THE PANEL OF PROSPECTIVE JURORS UNDER OATH PRIOR TO VOIR DIRE.

### Ground Twelve

TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO PRESENT EXCULPATORY EVIDENCE IN THE FORM OF TRANSCRIPTS OF TELEPHONIC COMMUNICATIONS BETWEEN PETITIONER AND THE ALLEGED VICTIM WHICH TENDED TO REFUTE THE ALLEGED HOSTILITIES BETWEEN PETITIONER AND THE VICTIM AS ALLEGED BY THE STATE, AS WELL AS THE ALLEGED VICTIM'S UNWILLINGNESS TO ASSIST IN EXONERATING PETITIONER.

### Ground Thirteen

TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO ADEQUATELY INVESTIGATE THE APPLICABLE FACTS AND POTENTIAL WITNESS RHONDA HALL TO ADVANCE THE DEFENSE OF CONSENSUAL SEX.

### Ground Fourteen

PETITIONER WAS DENIED DUE PROCESS OF LAW WHERE THE TRIAL COURT LACKED JURISDICTION TO ENTER JUDGMENT OR IMPOSE SENTENCE UPON PETITIONER WHERE FLORIDA STATUTES 794.011 (1999) WAS DECLARED TO BE AN UNCONSTITUTIONAL STATUTE.

**Ground Fifteen**

THE JUDGMENT WAS ENTERED OR SENTENCE WAS IMPOSED IN VIOLATION OF THE CONSTITUTION OF THE UNITED STATES WHERE THE CONVICTION AND SENTENCE VIOLATED PETITIONER'S SIXTH AMENDMENT RIGHT TO TRIAL BY JURY. (*Apprendi* and *Blakely* violation).

## STANDARDS OF REVIEW

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), this court's review of the state court's factual findings must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involved an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). Indeed, it is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." Id. *Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

Ineffective Assistance of Counsel Standard

To prevail on a claim of ineffective assistance of trial or appellate counsel, a Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The *Strickland* two-part test requires a Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

10

## **PETITION SUBJECT TO DISMISSAL ON PROCEDURAL ISSUES**

## **A. FAILURE TO RAISE FEDERAL CONSTITUTIONAL ISSUES IN GROUNDS ONE, TWO, THREE, AND FOURTEEN**

Grounds One, Two, Three (trial court error), and Fourteen (the jurisdictional issue) must be denied for failure to present questions of federal constitutional magnitude. Federal habeas relief is available to correct only those injuries resulting from a violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); *Wainwright v. Goode,* 464 U.S. 78 (1983); *Engle v. Isaac*, 456 U.S. 107, 119 (1982). Errors that do not infringe upon federally protected rights provide no basis for federal habeas corpus relief.

A state prisoner is entitled to relief under 28 U.S.C. § 2254 only if he is held "in custody in violation of the Constitution or laws or treaties of the United States." § 2254(a). A state's interpretation of its own rules or statutes does not raise a federal constitutional issue. *Wainwright v. Goode*, 464 U.S. 78 (1983). The writ of habeas corpus, 28 U.S.C. § 2254, was not enacted to enforce state-created rights. *Cabberiza v. Moore*, 217 F.3d 1329, 1333 (11th Cir. 2000).

Federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution, not to correct errors of fact. *Herrera v. Collins*, 506 U.S. 390, 400 (1993). Even when a petition which actually involves state law issues is "couched in terms of equal protection and due process," this limitation on federal habeas corpus review is of equal force. *See Willeford v. Estelle*, 538 F.2d 1194, 1196-98 (5th Cir. 1976). Generally, federal courts do not sit to review evidentiary rulings. *Osborne v. Wainwright*, 720 F.2d 1237, 1238 (11th Cir. 1983). Thus, the aforementioned claims or portions of claims must be dismissed for lack of jurisdiction pursuant to 28 U.S.C. § 2254(a).

11

**B. LACK OF EXHAUSTION/PROCEDURAL DEFAULT OF GROUNDS ONE, TWO, THREE, AND FOURTEEN FOR FAILURE TO RAISE CLAIMS IN STATE COURT AS ISSUES OF FEDERAL CONSTITUTIONAL DIMENSION**

Even though Mathews frames his claims in Grounds One, Two, and Three of the instant petition in terms of alleged violations of constitutional due process rights, these claims were not fairly presented to the state courts as issues of federal constitutional dimension. (See discussion of Ground Fourteen below). A review of the initial brief on direct appeal demonstrates that Mathews presented the claims as state law violations and relied solely upon state statutory and case law in support of his arguments.

"[E]xhaustion of state remedies requires that petitioners 'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971). In *Duncan*, the Court held that "[i]f state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." 513 U.S. at 365. *Accord, Anderson v. Harless*, 459 U.S. 4 (1982). *See also, Baldwin v. Reese*, 541 U.S. 27 (2004), where the Supreme Court pointed out that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply

labeling the claim "federal." 541 U.S. at 32.  Accordingly, Grounds One, Two, and Three must be dismissed as procedurally barred.

## GROUND FOURTEEN

The same is true regarding Ground Fourteen. In Ground Fourteen, Mathews alleges the state trial court lacked jurisdiction to enter judgment and impose sentence under state law because Section 794.011, Florida Statutes (1999) was declared unconstitutional by the Second District Court of Appeal as being enacted in violation of the single subject rule of the Florida Constitution. This claim does not present an issue of federal constitutional magnitude. As previously noted, a state's interpretation of its own rules or statutes does not raise a federal constitutional issue. *Wainwright v. Goode*, 464 U.S. 78, 104 S.Ct. 378, 78 L.Ed.2d 187 (1983).  Accordingly, Ground Fourteen must also be dismissed by this Court for lack of subject matter jurisdiction.

## C. PROCEDURAL BAR OF GROUNDS FOUR TO THIRTEEN, FOURTEEN, AND FIFTEEN

The ten ineffective assistance of trial counsel allegations raised in Grounds Four to Thirteen are unexhausted and procedurally barred.  (See discussion of Grounds Fourteen and Fifteen below). These claims were raised in the Rule 3.850 postconviction motions and were resolved by the trial court based on the record or evidenced adduced at an evidentiary hearing. These issues are now procedurally barred due to Mathews' failure to raise them on appeal from the denial of his Rule 3.850 motion for postconviction relief.

In an unpublished opinion, the Eleventh Circuit addressed this issue and differentiated between a state postconviction appeal following a summary denial and an appeal following a postconviction proceeding for which an evidentiary hearing was granted,

as it was in this case:

> Cortes's appeal did not follow an evidentiary hearing, and, therefore, he was not required to file an appellate brief. Furthermore, his decision to do so and to address only some of the issues does not waive the remaining issues raised in his Rule 3.850 motion. *See Webb v. State*, 757 So. 2d 608, 609 (Fla. Dist. Ct. App. 2000). Therefore, Cortes did exhaust his state remedies prior to filing his § 2254 petition. **In contrast, had Cortes received an evidentiary hearing, his failure to address issues in his appellate brief would constitute a waiver**. (footnote omitted).

*Cortes v. Gladish*, 2007 U.S. App. LEXIS 2833 (11th Cir. 2007) (emphasis added). The Eleventh Circuit correctly stated that in Florida, in non-summary proceedings, briefs are required and failure to include and argue any preserved issue in the initial brief acts as a waiver. *See Coolen v. State*, 696 So. 2d 738, 742 n.2 (Fla. 1997) (stating that a failure to fully brief and argue points on appeal "constitutes a waiver of these claims") (quoted in *Simmons v. State*, 934 So. 2d 1100, 1111 (Fla. 2006)). *See also, Hall v. State*, 823 So. 2d 757, 763 (Fla. 2002) ("[A]n issue not raised in an initial brief is deemed abandoned and may not be raised for the first time in a reply brief.").

Florida Rule of Appellate Procedure 9.141(b)(2) provides that in appeals from the summary denial of a Rule 3.850 motion without an evidentiary hearing, "[n]o briefs or oral argument shall be required, but any appellant's brief shall be filed within 15 days of the filing of the notice of appeal. The court may request a response from the appellee before ruling." Fla. R. App. P. 9.141(b)(2)(C). In contrast, in an appeal of a Rule 3.850 order after an evidentiary hearing, the movant is required to file an appellate brief, and the movant waives a claim if he does not include the claim in the brief without argument on the claim. *See, e.g., Shere v. State*, 742 So.2d 215, 224 n.6 (Fla. 1999)("In a heading in his brief, Shere asserts that the trial court erred by summarily denying nineteen of the twenty-three

claims raised in his 3.850 motion. However, for most of these claims, Shere did not present any argument or allege on what grounds the trial court erred in denying these claims. We find that these claims are insufficiently presented for review."); *Duest v. Dugger*, 555 So. 2d 849 (Fla. 1990)("Duest also seeks to raise eleven other claims by simply referring to arguments presented in his motion for postconviction relief. The purpose of an appellate brief is to present arguments in support of the points on appeal. Merely making reference to arguments below without further elucidation does not suffice to preserve issues, and these claims are deemed to have been waived").

Because Mathews' postconviction appeal was from a Rule 3.850 order denying relief **after an evidentiary hearing**, he was required to file a brief on appeal of the denial of postconviction relief and to provide argument relative to each ground. *Reaves v. Crosby*, 837 So. 2d 396, 398 (Fla. 2003)(Other than one cursory sentence, there was no argument relative to a ground; ground was not properly before the state court where other than one cursory sentence, there was no argument relative to the claim). By choosing not to brief the claims presented in Grounds One, Four, Five, Six, and Seven of the instant federal petition, Mathews waived and defaulted all claims included in these grounds.

### Grounds Fourteen and Fifteen

This same reasoning applies to the jurisdiction and sentencing issues raised in Grounds Fourteen and Fifteen of the instant petition. These claims were also raised in the Rule 3.850 motion and denied on their merits in the postconviction proceeding. Mathews' failure to raise these specific claims in the appeal from the adverse orders denying postconviction relief results in a procedural default of the issues. Claims that are

unexhausted and procedurally defaulted in state court are not reviewable by this Court unless the petitioner can demonstrate cause for the default and actual prejudice, *Wainwright v. Sykes*, 433 U.S. 72 (1977), or establish the kind of fundamental miscarriage of justice occasioned by a constitutional violation that resulted in the conviction of a defendant who was "actually innocent" contemplated in *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991); *Marek v. Singletary*, 62 F.3d 1295, 1301-02 (11th Cir. 1995).

Mathews cannot show valid cause to excuse his default because his collateral appellate counsel elected not to press the claims Mathews now presents to this Court.[2] Moreover, Mathews does not meet the prejudice or manifest injustice exceptions to lift the independent and adequate state bars applicable to his grounds. Consequently, Grounds Four, Five, Six, Seven, Eight, Nine, Ten, Eleven, Twelve, Thirteen, Fourteen, and Fifteen must be dismissed.

## D. GROUND TWELVE WAIVED AT POSTCONVICTION PROCEEDING

In Ground Twelve, Mathews contends that trial counsel was ineffective for failing to present exculpatory evidence in the form of transcripts of telephonic communications between Mathews and the alleged victim. According to Mathews, these communications tended to refute the hostilities between Mathews and the victim as alleged by the State, as well as the alleged victim's unwillingness to assist in exonerating Petitioner. This claim, presented as Ground Eleven in the Rule 3.850 motion, is procedurally barred because it

---

[2] The right to effective assistance of counsel does not attach to post conviction proceedings; there is no federal constitutional right to counsel in postconviction proceedings. See *Barbour v. Haley*, 471 F.3d 1222, 1227-1228 (11th Cir. 2006).

was expressly waived or abandoned during the postconviction proceeding. (See Respondent's Exhibit 16, Transcript of Evidentiary Hearing, page 9.) This ground was properly dismissed by the state court, without addressing the merits, on the basis that Mathews withdrew the allegation at the Rule 3.850 evidentiary hearing:

> In ground 1I, Defendant claims ineffective assistance of counsel due to counsel's failure to present exculpatory evidence in the form of transcripts of telephonic communications between Defendant and the alleged victim which tended to refute the alleged hostilities between Defendant and the victim as alleged by the State, as well as the alleged victim's unwillingness to assist in exonerating Defendant. Specifically, Defendant claims that during the trial, the defense maintained that Defendant and his former wife had engaged in consensual sex despite a domestic violence injunction initiated by the alleged victim. Defendant claims the State's position was that the alleged victim did not want anything to do with Defendant. Defendant claims his counsel was aware of taped telephonic conversations between Defendant and the alleged victim including some of which contained conversations wherein the alleged victim agreed to assist Defendant in exonerating himself of the charges. However, Defendant claims at no time during the trial did counsel attempt to produce the attempt or agreement between the alleged victim to assist Defendant. Defendant claims the telephonic conversations were recorded and transcribed, and at all times available to counsel. Lastly, Defendant claims that had counsel produced and presented this evidence to the jury, there is a reasonable likelihood that the outcome would have been different. At the evidentiary hearing, Defendant withdrew ground 1I, as such, this ground is dismissed.

(Exh 17: Order Denying Grounds 1E, 1F, 1H, and 1J of Defendant's Supplement to Motion for Postconviction Relief, page 7.)

## PETITION SUBJECT TO DISMISSAL ON THE MERITS

In Grounds One, Two, and Three, Mathews raises the same three issues of trial court error he presented in the initial brief on direct appeal. In Ground One, Mathews contends the trial court erred in disallowing defense counsel from asking Mathews on the stand whether his prior convictions had involved sexual or violent offenses, to which Mathews would have answered "No." The State properly argued in the appellee answer

17

brief:

      Unlike the series of cases cited by the appellant, the defense did not seek to ask the appellant about the substance of his prior convictions, nor to explain that he had, in the past, pled guilty because he was guilty. *See Ziermann v. State*, 696 So.2d 491 (Fla. 4th DCA 1997). Here, the question sought to be asked was designed to bypass any mention of the substance of the appellant's prior criminal history by simply asking a conclusory question aimed at his propensity to commit the crime charged.

      Clearly, the appellant made a tactical decision to attempt to get before the jury information about his character without disclosing what his prior convictions were. This is not a situation, as in *Scurry v. State*, 701 So.2d 587 (Fla. 2d DCA 1997) where the court refused to allow the defendant to testify about what his prior conviction was for. A review of the record shows that no attempt nor any offer of proof was made, regarding the nature of the Appellant's past criminal history beyond simply stating he had four prior felonies.

      There is no question that the defendant may attempt to lessen the impact of prior felony convictions, by testifying on direct.

> If the witness so desires he may of his own volition state the nature of the crime and offer any relevant testimony that would eliminate any adverse implications; for example, the fact that he had in the meantime been pardoned or that the crime was a minor one and occurred many years before.

*McArthur v. Cook*, 99 So.2d 565, 567 (Fla. 1957).

      The answer the Appellant's trial counsel proffered, that all the Appellant was going to say was that he has not committed a sexual or violent offense (T 326, 238) does not speak of what his prior record was, but rather what it was not. Nor did the Appellant seek to testify that his prior convictions resulted from pleas, as was the case in *Sullivan v. State*, 751 So. 2d 128 (Fla. 2nd DCA 2000) or in *Bibbs v. State*, 801 So. 2d 235 (Fla. 2nd DCA 2001).

      In ruling, the trial court stated:

> He is making specific reference to these charges by saying I have never done this before and that's character -- self-serving character statement. That's inadmissible under the law. If that's the question you are going to ask and if the State is objecting I would sustain it.

18

(T 328)

In sum, the Appellant was only prevented from giving a self-serving comment on the types of prior crimes he did not commit, rather then pointing to the ones he did commit and letting the jury draw whatever conclusion from his prior criminal record that they saw fit.

(Exh 2: Answer Brief of Appellee, pages 10-11).

In Ground Two, Mathews asserts the trial court erred in limiting certain testimony regarding the victim, Mrs. Mathews, appearing at a bond hearing for her husband on February 7, 2001, in a separate criminal case and two months after she took out a domestic violence injunction against him. The State responded in its answer brief:

The evidence the Appellant sought to introduce involved contact prior to the 12th. During the hearing on the motion in limine, the trial court asked Appellant's trial counsel what the relevance of the testimony he sought to bring in was. Counsel indicated that his client's conduct was not willful because "[H]er actions and words led him to believe the injunction was no longer valid. He didn't have to observe it. She didn't want to enforce it. As far as Mr. Mathews is concerned it's no longer a legal instrument." (T 577)

Just prior to Appellant taking the stand in his own defense, Appellant again raised the question of the February 7 hearing. The following colloquy occurred:

THE COURT: I think we discussed it. The fact that any party to such an action cannot waive a court's order prohibiting contact makes it irrelevant.

MR. FRASER: In the form of a proffer then the Court is denying us the right to go into that; is that correct?

THE COURT: Right. There is ample evidence there was contact anyway.

(T 384)

It does not follow, as Appellant alleges, that because the victim might not have wanted her husband to stay in jail on whatever charges were pending against him on the 7th of February, that she wanted continued contact with him. Nor do the cases cited by Appellant support his position.

19

Those cases deal with other crime evidence and are not analogous to the situation here.

> Evidence of "other crimes" is not limited to other crimes with similar facts. So-called similar fact crimes are merely a special application of the general rule that all relevant evidence is admissible unless specifically excluded by a rule of evidence. The requirement that similar fact crimes contain similar facts to the charged crime is based on the requirement to show relevancy. This does not bar the introduction of evidence of other crimes which are factually dissimilar to the charged crime if the evidence of other crimes is relevant.

*Dennis v. State*, 817 So.2d 741, 762 (Fla. 2002).

In no way does the evidence Appellant sought to introduce in any way prove or disprove his motive to commit the crimes he is charged with. The trial court did allow testimony regarding the victim's two post February 12 visits to the Appellant at the jail. Contrary to Appellant's assertion at page 28 of his brief that the trial court initially determined that the defense could not question Mrs. Mathews about visiting her husband at the jail and then reversed [sic] his opinion, a review of the record clearly shows that the trial court reserved decision on that matter. (T 584) When raised again before jury selection started, Appellant trial counsel stated:

> At some point we need to address the question of the relevance of visitation. Your Honor left that one for another day when we had the hearing on the State's motion in limine. You reserved ruling on it.

(T 4)

This evidence is materially different then [sic] testimony about contact prior to the commission of the crimes for which the Appellant was on trial. The trial court explained the ruling and said:

> Under the circumstances -- you can get into the circumstances on direct or redirect why that was happening. Apparently she wants to explain that. That is contact after the offense. For the sake of consistency I will allow both inquiries in.

(T 86)

Since the defense, from the beginning, to the rape charge was

20

consent, what the victim did after the offense could be relevant to the ultimate question of voluntariness and was admitted.

It is the pre-incident contact that the trial court excluded, but, as the trial court pointed out, there was ample evidence in the record of contact between the parties (T 384), so even if the exclusion of the pre-offense contact was error, it was harmless. *See State v. DiGuilio*, 491 So. 2d 1129 (Fla. 1986).

(Exh 2: Answer Brief of Appellee, pages 12-15).

In Ground Three, Mathews contends he was denied a fair trial when the trial court

abused its discretion in denying his motion for mistrial, as to the claim the State elicited

testimony of uncharged crimes without prior notice. The State argued in its answer brief:

Appellant complains that the State elicited testimony of uncharged crimes without prior notice, violating a number of rules. He first complains about a question asked of the victim by the prosecutor, "Neither of these two dates that you were there did he try to influence you in not coming to court." The Appellant objected, the question was not answered. The basis of the objection was a claim that the question constituted a *Richardson*[3] violation. (T 170) In the bench conference that followed, the following happened:

THE COURT: What are you trying to elicit?

MR. SHEIN: The defendant on numerous occasions has influenced the victim not to come to court to testify against him.

THE COURT: Told the victim and witnesses.

MR. FRASER: If Mr. Shein can keep his voice down.

MR. SHEIN: It was stated in depositions. Aisha Fein's deposition. I have to go back and look at her deposition. I am not going to swear it was in her deposition.

THE COURT: Why don't you get it?

MR. FRASER: Here is the problem. First of all, it's an uncharged crime and there has been no notice of any *Williams*

---

[3] *Richardson v. State*, 246 So. 2d 771 (Fla. 1971).

rule.

THE COURT: It goes to the state of mind. There is no question about the relevance of it. My concern if there is a *Richardson* concern.

MR. FRASER: Let me explain the problem. We have 26 of those tape recordings and those are replete with his asking don't -- drop the charges or whatever. I understand the State isn't going to play those. Now, if she talking about that same conversation same thing with the predicate there is no predicate. That's why I don't know which conversation she is talking about. There might have been 50 of them.

THE COURT: Why don't you pick one?

MR. FRASER: He can't because he doesn't have any dates on any of these. They recorded them for whatever reason. When they transcribed them they didn't tell them what date.

MR. SHEIN: Judge, I will just move on if he moved for mistrial.

MR. FRASER: I did move when he was walking up here.

THE COURT: I didn't hear it.

MR FRASER: On the *Richardson* matter I do object to bringing this in because it's ambiguous.

THE COURT: Is there any dispute about the fact she says these conversations took place.

MR. FRASER: No. ...

THE COURT: We got until 5:45. I am not going to restrict you obviously. To make it clear I didn't hear that you made a motion for mistrial.

MR. FRASER: I did on the basis of the failure to disclose the conversation. I do move for mistrial on the conversation he has brought out where he has asked the question about what Mr. Mathews said. There is no predicate. I will withdraw the one on the discovery violation. It's

22

cumulative. I move for mistrial on his failure to lay a proper predicate on these statements.

THE COURT: I will deny that.

(T 171-174)

From a review of the record, it is difficult to understand exactly what the objection was. However, since the question was never answered, nor did it suggest an answer, nothing was before the jury. The fact that Mrs. Mathews visited the Appellant twice at the jail was already before the jury, so they knew there was conversation. How there was no predicate for the jail conversations is unclear. The dates the victim was there was already before the court, the reason she was there had been testified to, what further predicate was necessary is not set forth. As to the taped conversations of calls made from the jail, the Appellant, as he acknowledged in the conversation recorded by the victim's mother, knew that phone conversations from the jail were taped. (T 163) Those taped conversations, at least at the point of the motion, were not in evidence and the colloquy quoted above indicates that there was no intention of playing them. At the end of the colloquy, the Appellant withdrew any claim of a discovery violation. (T 173)

The victim's mother testified that the Appellant had called her between February 12 and her deposition on May 24. When asked what he said, the Appellant objected based upon lack of predicate. The trial court ruled that if the State established how many times he had called, that would take care of it. (T 241- 242) She then testified, without objection, that he asked her to talk to her daughter because he was facing life and he asked her to plead the fifth. (T 242)

The Appellant then moved for a mistrial because the questions established that fear of life and that he was not facing life. The trial court denied the motion but asked if the Appellant wanted a curative instruction. An instruction was given

. . . .

Here, the statement by the witness about the fears of the Appellant as to sentence were cured by the curative instruction the trial court gave to the jury.

(Exh 2: Answer Brief of Appellee, pages 16-20).

**Analysis**

23

The state district court of appeal affirmed Mathews' conviction and sentence based on the record and the appellate briefs.  Nothing in the above excerpts from the State's brief demonstrates that the state court's decision as to Grounds One, Two, and Three was "contrary to" clearly established precedent of the Supreme Court of the United States or involved an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000).  On the merits, then, Grounds One, Two, and Three, even if properly before this Court, would not warrant federal habeas corpus relief.

### Grounds Four Through Thirteen

In Grounds Four through Thirteen, Mathews raises ten allegations of ineffective assistance of trial counsel.  The state trial court recognized and properly applied the *Strickland* standard to all claims of ineffective assistance of counsel.  Moreover, a full and fair evidentiary hearing was held to resolve five of those claims.

**In Ground Four**, Mathews asserts defense counsel was ineffective for failing to call as defense witnesses LaShon Williams and Jeanette Williams.  This matter was addressed at the evidentiary hearing held May 2, 2005. The state court rejected Mathews' claim for the reasons set out in the order issued May 15, 2007:

> In ground 1A of his Motion, Defendant alleges that his trial counsel, Robert Fraser, Esquire ("Mr. Fraser"), provided ineffective assistance of counsel when he failed to contact LaShon and Jeannette Williams and call them as witnesses. He claims that each of these women styled the victim, Regina Mathews' ("Ms. Mathews"), hair and would have testified that Ms. Mathews' braids could not have been pulled out without the victim's knowledge and the act of pulling them out would have caused severe injury to her scalp. Furthermore, Defendant claims that they would have testified that Ms. Mathews' admitted to them that Defendant did not actually rape her. (See Motion for Postconviction Relief, pages 6-7, attached.)

> In ground 1A Defendant also alleges that Mr. Fraser was ineffective

24

for failing to introduce evidence that the victim asked his first attorney, Steven T. Green, Esquire ("Mr. Green"), "what would happen" if she admitted that she fabricated the rape. (See Motion for Postconviction Relief, pages 6-7, attached.)

## Evidentiary Hearing

At the evidentiary hearing, Defendant testified that he gave LaShon and Jeannette William's contact information to Mr. Fraser and informed him that they not only styled Ms. Mathews' hair but also that Ms. Mathews' had told them she fabricated the rape. (See Hearing Transcript, page 5, attached.)

LaShon Williams testified that Ms. Mathews' braids would not fall out on their own, that Ms. Mathews would know if and when they were pulled out, and that she had explained these facts to Mr. Green; however, she also testified that a braid could come out if pulled and that pulling out a braid would not necessarily cause Ms. Mathews' scalp to bleed. (See Hearing Transcript, pages 24-31, attached.) Furthermore, she testified that Ms. Mathews' hair was the only topic she would have testified about at Defendant's trial. (See Hearing Transcript, page 30 attached.)

Mr. Fraser then testified that he did not speak with or receive any letters regarding either LaShon or Jeannette Williams nor did Defendant ever mention their names to him. (See Hearing Transcript, pages 45-47 and 51-52, attached.) He also testified that if he had been informed that Ms. Mathews had told a potential witness that she fabricated the rape, he would have investigated the admission and would have called that person as a witness. But that in the instant case, he was never informed that such a witness existed. (See Hearing Transcript, pages 42-45, attached.)

. . .

Analysis

Regarding the hair braid found in the back of Ms. Mathews' truck, the Court finds Mr. Fraser's testimony credible that he was never informed that LaShon and Jeannette William's would have testified to the difficulty of removing a hair braid; therefore his performance was not deficient for failing to call them as witnesses. Furthermore, even if Mr. Fraser's performance was deficient, Defendant has failed to show how he was prejudiced by the deficiency. At trial, Mr. Fraser did cross-examine Ms. Mathews regarding the difficulty in removing a hair braid. (See Trial Transcript, page 181, attached.) In addition, Ms. Mathews testified that Defendant twice pulled her hair during the assault; an act which LaShon Williams admitted at the evidentiary hearing

could cause a hair braid to fall out. (See Trial  Transcript, page 148, attached.) Consequently, the Court finds that Mr. Fraser's performance was not deficient for failing to call LaShon and Jeannette Williams to testify regarding Ms. Mathews' hair brads; and even if he was deficient, that Defendant failed to show that he was prejudiced by the deficiency.

Regarding Defendant's allegation that Ms. Mathews told LaShon and Jeannette Williams that she lied about the rape charge, LaShon Williams testified that she would only have testified at Defendant's trial about Ms. Mathews' hair braids. She did not mention any admission by Ms. Mathews. Furthermore, the Court finds Mr. Fraser's testimony credible that he was never told about any witness that could testify that Ms. Mathews admitted to fabricating the rape. Therefore the Court finds that Defendant has failed to show that Mr. Fraser's performance was deficient for failing to call LaShon and Jeannette Williams to testify about Ms. Mathews' alleged admission.

Regarding Defendant's allegation that Mr. Fraser's performance was deficient for failing to introduce evidence that Ms. Mathews called Mr. Green to inquire about what would happen to her if she admitted fabricating the rape, no testimony was introduced at the evidentiary hearing regarding this allegation. Therefore Defendant failed to show that he was prejudiced or that Mr. Fraser was deficient for failing to introduce this fact.

It is therefore ORDERED AND ADJUDGED that Defendant's Motion is hereby DENIED.

(Exh 21: May 15, 2007, Order at pages 2-6 (footnotes omitted)).

**In Ground Five**, Mathews alleges trial counsel was ineffective for failing to move for a severance of counts III and IV of the Information when these charges were in no way tied to the underlying offenses and prejudiced Mathews' right to a fair trial with respect to Counts I and II. This claim was raised in the Rule 3.850 motion as ground 1B, and was summarily denied by the trial court for the following reasons:

In ground 1B, Defendant claims ineffective assistance of counsel due to counsel's failure to move for a severance of offenses with respect to counts three and four of the Information because the charges were in no way tied to the underlying offenses and prejudiced Defendant's right to a fair trial on counts one and two. Defendant claims that the State used the domestic injunction to demonstrate Defendant's propensity to commit a crime, thereby reflecting negatively on Defendant's character.

26

However, a review of the record reflects that even though all four counts were tried together, the jury found Defendant not guilty of one count of Sexual Battery (12 years of age or older)(count two). (See Verdict Form, attached). Consequently, Defendant has failed to meet the second prong of *Strickland* in that he has failed to prove how counsel's alleged failure to move for a severance of offenses resulted in prejudice when the jury found Defendant not guilty of count two. Since Defendant has failed to meet the second prong of *Strickland*, it is unnecessary to address the performance component. *See Kennedy v. State*, 547 So. 2d 912, 914 (Fla. 1989). As such, no relief is warranted upon ground 1B.

(Exh 7: April 15, 2004, Order at pages 4-5).

**In Ground Six**, Mathews faults trial counsel for failing to file a motion in limine in order to exclude the tapes of telephonic conversations between Mathews and the alleged victim as well as testimony relevant to these conversations. The state trial court summarily denied this claim on June 9, 2004, reasoning as follows:

In ground 1C, Defendant claims ineffective assistance of counsel due to counsel's failure to file a motion in limine to exclude from evidence the tapes of the telephonic communications between Defendant and the victim. Specifically, Defendant claims that the tapes of the telephonic conversations between Defendant and the victim were not subject to adversarial testing. Defendant claims that in one of the conversations, Defendant told the victim, "I'm sorry for what I did" without ever clarifying or specifying what he was apologizing for. Defendant further claims that the State paraded the bland statement to the jury as though Defendant had confessed his guilt to the offenses charged in the Information, and cites to pages 489 - 490 of the trial transcript. Defendant claims that the admission of the tape forced Defendant to give up his constitutional right to remain silent because the jury would demand that Defendant explain the nature of the apology or his silence would infer guilt.

Defendant refers to the following statements made by the State:

Make sure you understand what you are hearing. If you have to write it down, write it down. Make sure everybody is on the same page. This is what he says. She is railing him. She is crushing him on that phone call.

(See Trial Transcript, Volume V, page 489, attached).

27

> What reasonable person when someone is accusing you of doing that to them [sic] what would a person do? This is what a person would do. You're crazy. What are you talking about rape you? I am not talking to you ever again on the phone. I am never seeing you again. You're nuts. You're crazy. This is unbelievable. Raped you? Something along those lines. Maybe someone will have some curse words thrown in. That's what you would think a reasonable person would do.

(See Trial Transcript, Volume V, page 489, attached).

> Then he says I am sorry for the things you just stated. I am sorry for those things. Don't be deceived. Don't be seduced thinking it was a generic sorry. Sorry about everything. Sorry I have a drug problem. Sorry I don't contribute enough to the house. You take that sorry in context.

(See Trial Transcript, Volume V, page 490, attached).

A review of the record reflects that Defendant's counsel did file a Motion in Limine Regarding Recordings of Telephone Conversations, but said Motion did not contain any reference to a statement from Defendant that "I'm sorry for what I did." (See Motion in Limine Regarding Recordings of Telephone Conversations, January 7, 2002 Transcript, attached).

In its Response, the State asserts that Defendant's statement, "I'm sorry for what I did" was not irrelevant or overly prejudicial. (See State's Response to Court's Order to Respond, in Part, to Defendant's Motion For Post Conviction Relief, attached). The State further asserts that Defendant's statement was properly admitted as an admission, which is a hearsay exception under § 90.803(18), Florida Statute. (See State's Response to Court's Order to Respond, in Part, to Defendant's Motion For Post Conviction Relief, attached). The State further alleges that Defendant's statement was clearly relevant to whether or not Defendant committed the crime charged. (See State's Response to Court's Order to Respond, in Part, to Defendant's Motion For Post Conviction Relief, attached).

Moreover, the State argues that Defendant's argument that the admission of the statement affected his right to confrontation is without merit because Defendant made the statement. (See State's Response to Court's Order to Respond, in Part, to Defendant's Motion For Post Conviction Relief, attached). The State further argues that Defendant's claim that the State improperly utilized the statement as a specific admission is an argument regarding the weight of the evidence, and not its admissibility. (See State's Response to Court's Order to Respond, in Part, to Defendant's Motion For

Post Conviction Relief, attached). Lastly, the State argues that Defendant's admission is clearly relevant and admissible, and by including the admission in his Motion in Limine, Defendant's counsel Mr. Fraser would have had to argue for something that he had no good faith basis to argue. (See State's Response to Court's Order to Respond, in Part, to Defendant's Motion For Post Conviction Relief, attached).

After reviewing ground 1C, the State's Response, the court file, and the record, the Court finds that Defendant's statement, "I'm sorry for what I did" was an admission, and admissible as a hearsay exception under § 90.803(18), Florida Statutes. Moreover, the Court finds that Defendant's statement was relevant to whether or not Defendant committed the charged crime. Consequently, Defendant has failed to meet the first prong of *Strickland* in that he has failed to prove how counsel acted deficiently in failing to file a motion in limine to exclude the alleged statement when said statement was relevant and admissible under § 90.803(18), Florida Statutes. Since Defendant has failed to meet the first prong of *Strickland*, it is unnecessary to address the prejudice component. *See Downs v. State*, 740 So. 2d 506, 518 n. 19 (Fla. 1999). As such, no relief is warranted upon ground 1C.

(Exh 9: June 9, 2004, Order at pages 4-6).

**In GROUND SEVEN,** which was ground 1D of the Rule 3.850 motion, Mathews argues trial counsel was ineffective for failing to request a special jury instruction on circumstantial evidence where the State's entire case was based upon circumstantial evidence. After receiving a response from the State, and reviewing the record, the state trial court reasonably denied this claim without a hearing based on the following:

In ground 1D, Defendant claims ineffective assistance of counsel due to counsel's failure to request special jury instructions on circumstantial evidence when the State's entire case was based upon circumstantial evidence. However, the Florida Supreme Court has previously stated that when the jury is properly instructed on reasonable doubt and the burden of proof, an instruction on circumstantial evidence is unnecessary. *See In re Standard Jury Instruction in Criminal Cases*, 431 So. 2d 594, 595 (Fla. 1981). A review of the record reflects that the jury was properly instructed on reasonable doubt and the burden of proof. (See Jury Instructions, attached). Moreover, Defendant fails to allege that the instructions on reasonable doubt and the burden of proof were not given or that they were deficient. Therefore, a special jury instruction on circumstantial evidence is unnecessary.

29

After reviewing ground 1D, the court file, and the record, the Court finds that Defendant has failed to meet the second prong of Strickland in that he has failed to prove how counsel's alleged failure to request special jury instructions on circumstantial evidence resulted in prejudice when the jury was properly instructed on reasonable doubt and the burden of proof. Since Defendant has failed to meet the second prong of *Strickland,* it is unnecessary to address the performance component. *See Kennedy v. State*, 547 So. 2d 912, 914 (Fla. 1989). As such, no relief is warranted upon ground 1D.

(Exh 7: April 15, 2004, Order at pages 6-7).

**In GROUND EIGHT**, Mathews alleges trial counsel was ineffective for failing to challenge for cause the impanelment of juror #4, William Rosas, thereby denying Petitioner his right to a fair trial by an impartial jury. The state trial court granted an evidentiary hearing on this claim, which was designated ground 1E in the Rule 3.850 motion. The court explained the basis for its rejection of this ground as follows:

In ground 1E, Defendant claims ineffective assistance of counsel due to counsel's failure to challenge for cause the impanel of juror #4 William Rosas, thereby denying Defendant his right to a fair trial by an impartial jury. Specifically, Defendant claims that during voir dire, Mr. Rosas stated that he could not follow the law. Defendant further claims that Mr. Rosas was never rehabilitated and counsel never challenged Mr. Rosas' capacity to sit as a juror. Lastly, Defendant claims he was prejudiced by counsel's omission in that his jury was comprised of an individual who expressed a lack of respect for the law, thereby denying Defendant a fair trial.

A review of the record reflects that the following transpired during voir dire:

SHEEN: All right. I hope this experience will be better for you. Mr. Rosas, say there is a law, and there is not, but say there is a law that says if a prosecutor which is what I am, during jury selection which is what we are doing right now, wears a yellow tie and has a goatee and that's a crime. Say there is that law. You are on the jury and this is the evidence you see would you have to follow that law and find me guilty?

ROSAS: No.

30

> SHEEN: Why not because you don't like the law?
>
> ROSAS: Exactly.
>
> SHEIN: I appreciate your honesty. But even if the judge instructs you even if you don't like it you raised your right hand to uphold that law and even if you don't like it are you going to follow it and I don't want you to change your answer just because I am asking?
>
> ROSAS: Would I be prosecuted if I didn't?
>
> SHEIN: That's another day. Would you follow the law if you didn't like it?
>
> ROSAS: No.

Moreover, Mr. Rosas was never rehabilitated or challenged, and sat on the jury in Defendant's trial.

> Testimony received at the evidentiary hearing indicated that Mr. Rosas was not rehabilitated or challenged. Specifically, Defendant's trial counsel testified that based upon the answers given by Mr. Rosas during voir dire that he felt that Mr. Rosas would make "pretty good defense juror." Trial counsel further testified that he felt that Mr. Rosas was a "free thinker" and as such would be good for the defense. (See Transcript of Evidentiary Hearing, pages 47- 49, 51- 53, attached). The Court finds that Defendant's trial counsel made a strategic decision and that strategic decisions do not constitute ineffective assistance of counsel where alternative courses had been considered and rejected and trial counsel's decision was reasonable under the norms of professional conduct. *Davis v. State*, 875 So. 2d 359 (Fla. 2003), *reh'g denied*, (June 3, 2004). As such, Defendant is not entitled to relief on this ground.

(Exh 17: May 8, 2006, Order at pages 3-4).

The state trial court's determination in this instance was reasonable. A trial counsel's strategic or tactical choices in a criminal case, after a thorough investigation of the law and facts, "are virtually unchallengeable in an ineffective assistance of counsel claim . . ." *Strickland*, 466 U.S. at 689-690.

**In GROUND NINE**, Mathews contends trial counsel was ineffective for failing to

move for a mistrial based on one juror's lack of truthfulness when the state trial court asked all prospective jurors if they recognized the names of any of the State or defense witnesses. This claim was reasonably denied by the postconviction court after a full and fair evidentiary hearing:

> In ground 1F, Defendant claims ineffective assistance of counsel due to counsel's failure to move for a mistrial when the Court asked all prospective jurors if they recognized the names of any State or defense witnesses and to identify the witness's name that they recognized and no juror did so. Specifically, Defendant claims State witness Deputy Tracy Reeves informed the bailiff during the trial that she recognized juror Mary Finnerman. Defendant further claims that he was not involved in the bench conference discussion regarding this matter. However, Defendant claims that later in the trial, Defendant informed his counsel that Deputy Reeves and juror Finnerman had communicated with each other.

> Defendant claims that the Court subsequently inquired of Defendant and Defendant informed the Court that Deputy Reeves winked at juror Finnerman when she entered the courtroom to take the stand. Defendant claims he placed his observations on the record. However, Defendant claims juror Finnerman denied knowing Deputy Reeves, explaining that Reeves was possibly an exstudent. Defendant claims that Deputy Reeves subsequently told the Court that juror Finnerman was a neighbor, which exhibits that juror Finnerman was possibly not telling the truth. Defendant claims that counsel's failure to move for a mistrial denied Defendant his right to a fair trial by an impartial jury. Lastly, Defendant claims he was prejudiced because the juror was not impartial and nobody knows the extent of juror Finnerman's influence on the jury and its verdict.

> A review of the record reflects that the following transpired:

> COURT: Counsel would you approach? (Whereupon, proceedings were held at bench.)

> COURT: I hope this is not going to be a problem. One of the witnesses recognizes one of the jurors from the neighborhood. If you want to inquire of the witness at the bench we can get into more detail about that. He doesn't know this person very well.

> BAILIFF: She just recognizes her from walking the dog.

32

COURT: Who are we talking about?

BAILIFF: Reeves.

FRASER: I don't have any problem with that if that's the case. I might want to talk to the juror.

BAILIFF: The lady teacher.

COURT: We can do it before or after. The best thing to do is talk to Officer Reeves first.

FRASER: That doesn't concern me at all. Whether the juror recognizes Officer Reeves concerns me a great deal. Why don't we bring in Officer Reeves and see what the juror's reaction is?

COURT: Just continue on and in the next recess we can ask her. (Bench conference concluded.)

Subsequently, the following proceedings were held at the bench:

COURT: Everybody is up here.

FRASER: Mr. Mathews is telling me that the deputy and the juror number six Mrs. Finnerman waved at each other.

COURT: I will wait until the lunch recess and ask her some questions. (Bench conference concluded.)

Another bench conference was held where the following transpired:

FRASER: The reason I would like to do is I have a lunch engagement but I would like to talk to this juror about Deputy Reeves.

COURT: While you are up here, Mr. Mathews, keep your voice down. You say you saw the juror wave at her?

DEFENDANT: Deputy winked at the juror when she first came in before she took the stand.

COURT: Now, you want me to ask the juror about that?

FRASER: Yes, sir. Whether she knows her or

33

recognizes her.

      COURT: All right. And any greeting exchanged?

      FRASER: Yes.

      SHEEN: Are you going to ask her about all the witnesses?

(Bench conference concluded.)

      Whereupon, the Court allowed Defendant to place his concern on the record. Later during the trial, the issue was raised again.

      The testimony as received at the evidentiary hearing indicated that the juror, Ms. Finnerman was at that time an instructor at HCC, and that some of the students in the courses taught by her were police officers and that although she did not recognize Deputy Reeves, she may have had her in class. (See Transcript of Evidentiary Hearing, pages 16-23 and 54-56, attached). Defendant's trial counsel further testified that he was unsure that based upon where Defendant was sitting at the time the alleged wink was made that Defendant could even have seen what he stated he had seen, but that he raised the issue with the Court and that the Court found no reason to strike the juror. Trial counsel also testified that based on Ms. Finnerman's responses to the Court inquiry, that he had no concerns about whether she was testifying truthfully about any alleged wink or whether she could be fair or impartial. Trial counsel also stated that he chose not to request a mistrial because the likelihood of that being granted was minimal at best and because he had laid the record for any appellate purposes. (See Transcript of Evidentiary Hearing, pages 48 - 51, attached). As such, Defendant is not entitled to relief on this ground.

(Exh 17: May 8, 2006, Order at pages 4-7).

      **In GROUND TEN**, Mathews complains his trial attorney was ineffective for failing to object to improper prosecutorial comments during closing argument. Specifically, refers to the prosecutor's statement, "Regina Mathews because she is a compassionate person. Maybe his family would let him shower but that's not what he told her. She was being nice." This claim, which was raised as ground 1G in the motion for postconviction relief, was summarily denied by the trial court in its order dated October 28, 2004:

In ground 1G, Defendant claims ineffective assistance of counsel due to counsel's failure to object to improper prosecutorial comments during closing arguments. Specifically, Defendant takes issue with the following statement:

> Regina Mathews because she is a compassionate person. Maybe his family would let him show[er] but that's not what he told her. She was being nice.

(See Trial Transcript, Volume V, page 513, attached). Defendant claims the alleged statement amounted to testimony with respect to the alleged victim's character which was never in evidence nor was the defense given any opportunity to refute this picture that the State painted of its key witness. Defendant claims that was improper impeachment and defense counsel never objected to the alleged impropriety. Defendant further claims he was prejudiced by counsel's omission because the jury was allowed to hear things that were never in evidence but mistakenly took these statements as truthful summarizations of what was not evidence at all. Lastly, Defendant claims the statements could have easily influenced the jury's verdict without them knowing that this was not evidence.

A review of the record reflects that Ms. Regina Mathews did testify that Defendant told her that he needed to take a shower, which he eventually did. (See Trial Transcript, Volume II, pages 122 - 123, and 180, attached). When asked why she let Defendant get into her car, she answered:

> Honestly even though the thing [sic] was going through in our life he was still my husband and he needed a bath. He needed me so I felt I would let him take a shower. He was my husband.

(See Trial Transcript, Volume II, page 123, attached). When asked what her intentions were when she got to the house, she responded as follows:

> Oh, he was - - as a matter of fact, as I was driving I was telling him I said "Now, you are going to take a shower and you are going to leave now." He said "I am going to leave all right.""Now take a shower and you are going to go." So he was okay with that.

(See Trial Transcript, Volume II, page 124, attached). She further testified that she did not tell Defendant to get out of the truck because he was still her husband, she felt like he needed her, and she is a good person. (See Trial Transcript, Volume II, pages 177-178, and 184, attached).

After reviewing ground 1G, the court file, and the record, the Court finds that

35

Ms. Regina Mathews testified that she agreed to let Defendant take a shower because he was still her husband and she was a good person. The Court further finds that the State's statements made during closing argument were a fair comment on Ms. Regina Mathews' trial testimony, and therefore, were a fair comment on the evidence presented during the trial. Consequently, the Court finds that Defendant has failed to meet the first prong of *Strickland* in that he has failed to prove how counsel acted deficiently in failing to make the alleged objection when the State's statements were a fair comment on the evidence presented during the trial. Since Defendant has failed to meet the first prong of *Strickland,* it is unnecessary to address the prejudice component. *See Downs v. State*, 740 So. 2d 506, 518 n. 19 (Fla. 1999). As such, no relief is warranted upon ground 1G.

(Exh 11: October 28, 2004, Order at pages 7-8).

**In GROUND ELEVEN**, Mathews asserts trial counsel was ineffective for failing to object to the court's failure to swear the panel of prospective jurors under oath prior to voir dire. This claim, presented as ground 1H in the motion for postconviction relief, was properly denied after an evidentiary hearing:

In ground 1H, Defendant claims ineffective assistance of counsel due to counsel's failure to object to the Court's failure to swear the panel of prospective jurors under oath prior to voir dire. Specifically, Defendant claims that he was prejudiced because without the oath, the jurors obviously did not recognize the necessity of truthfulness which became evident in juror Mary Finnerman's failure to acknowledge her acquaintance with State witness Deputy Tracy Reeves. Defendant further claims he was prejudiced by counsel's omission because he was denied a fair trial by an impartial jury where juror Finnerman tried the case with five other jurors when she knew one of the State's key witnesses, but pretended otherwise. Lastly, Defendant claims that no one can be sure as to what degree of influence juror Finnerman had on the verdict.

The testimony presented indicated that although the jury panel in the case at bar were not sworn by the judge at the trial, they were sworn during the regular procedure in the jury room. (See Transcript of Evidentiary Hearing, pages 61-63, attached). Trial counsel testified that once a panel was chosen, the usual and customary practice was for courtroom clerk to swear in the panel. That the chosen jurors recite the oath and that if the jury panel had not been sworn in this case, it would have been something that he would have been aware of (See Transcript of Evidentiary 51 of 57 52 Hearing, pages 56-58, attached). The Court finds that based upon the testimony given at the evidentiary hearing that the jury panel in Defendant's

36

criminal action was sworn, that juror Finnerman knew and understood what her duty as a juror was, and that Defendant was tried by a fair and impartial jury. As such, Defendant is not entitled to relief on this ground.

(Exh 17: May 8, 2006, Order at pages 7-8).

**In GROUND TWELVE**, Mathews claims trial counsel was ineffective for failing to present exculpatory evidence in the form of transcripts of telephonic communications between Mathews and the alleged victim which tended to refute the alleged hostilities between Mathews and the victim as alleged by the State, as well as the alleged victim's unwillingness to assist in exonerating Petitioner. This claim, presented as ground 1I in the Rule 3.850 motion, was properly dismissed by the state court because Mathews expressly waived this claim during the evidentiary hearing. The court's order states:

> In ground 1I, Defendant claims ineffective assistance of counsel due to counsel's failure to present exculpatory evidence in the form of transcripts of telephonic communications between Defendant and the alleged victim which tended to refute the alleged hostilities between Defendant and the victim as alleged by the State, as well as the alleged victim's unwillingness to assist in exonerating Defendant. Specifically, Defendant claims that during the trial, the defense maintained that Defendant and his former wife had engaged in consensual sex despite a domestic violence injunction initiated by the alleged victim. Defendant claims the State's position was that the alleged victim did not want anything to do with Defendant. Defendant claims his counsel was aware of taped telephonic conversations between Defendant and the alleged victim including some of which contained conversations wherein the alleged victim agreed to assist Defendant in exonerating himself of the charges. However, Defendant claims at no time during the trial did counsel attempt to produce the attempt [sic] or agreement between the alleged victim to assist Defendant. Defendant claims the telephonic conversations were recorded and transcribed, and at all time available to counsel. Lastly, Defendant claims that had counsel produced and presented this evidence to the jury, there is a reasonable likelihood that the outcome would have been different. At the evidentiary hearing, Defendant withdrew ground 1I, [sic] as such, this ground is dismissed.

(Exh 17: May 8, 2006, Order at page 8).

**In GROUND THIRTEEN**, Mathews contends trial counsel was ineffective for failing to adequately investigate the applicable facts and potential witness Rhonda Hall to advance the defense of consensual sex. This claim was presented in the motion for postconviction relief as ground 1J, and was denied after an evidentiary hearing, for the following reasons:

> In ground 1J of his Motion and his Memorandum of Law, Defendant claims ineffective assistance of counsel. Specifically, Defendant claims ineffective assistance of counsel due to counsel's failure to adequately investigate the applicable facts and potential witness Rhonda Hall to advance and bolster the defense of consensual sex. Specifically, Defendant claims that Rhonda Hall could have testified that the victim Regina Mathews confided in her that Defendant did not rape her and that she was getting back at Defendant for the problems in their marriage. Defendant claims that Rhonda Hall contacted Defendant's Assistant Public Defender Steven T. Green with the alleged information and Mr. Green told her that he would call her as a defense witness. Defendant claims his trial counsel Mr. Robert Fraser was advised of the above information and refused to act upon said information. Defendant further claims that Ms. Hall's testimony would have corroborated Defendant's trial testimony. However, Defendant claims counsel's omission prejudiced Defendant because the jury was denied the opportunity to hear vital testimony that would have put the case and evidence in a totally different light. Lastly, Defendant claims that had the jury heard Ms. Hall's testimony supporting Defendant's defense, Defendant could have possibly been exonerated of the charges.
>
> At the evidentiary hearing, Defendant's trial counsel testified that in one of the many, many, many letters that Defendant had written him prior to trial was there any mention of Ms. Hall. That her name was listed among the names of other witnesses who Defendant indicated could testify that Defendant and the victim resided together even though a domestic violence injunction was in force. Trial counsel further stated under oath that he had no idea that Ms. Hall would be testifying the victim had told her that she had lied to have Defendant arrested. That he had never spoken with Ms. Hall prior to trial and that his investigator had contacted her but that she had not responded. Finally, Defendant's trial counsel indicated that had he known what Ms. Hall could testify to, he would have called her as a witness even though as Defendant's mother, she would just about be automatically disqualified for credibility purposes. Additionally, trial counsel stressed that if any such conversation had occurred, he would have noted it in the file and would have been in a quandary about whether to use her testimony or not. (See Transcript of Evidentiary Hearing, pages 41-46, attached). As such, the Court finds that Defendant's trial counsel was not ineffective because he was

not informed that Ms. Hall could have testified that the victim confided in her that Defendant did not rape her and that she was getting back at Defendant for the problems in their marriage. As such, Defendant is not entitled to relief on this ground.

(Exh 17: May 8, 2006, Order at pages 1-9).

In **GROUND FOURTEEN**, Mathews alleges he was denied due process of law because the trial court lacked jurisdiction to enter judgment or impose sentence where Florida Statute § 794.011 was declared to be unconstitutional by the Second District Court of Appeal.  The state trial court denied this claim, stating:

> In Ground 4, Defendant claims the Court lacked jurisdiction to enter judgment or to impose sentence upon Defendant where §794.011(5), Florida Statute (1999) enacted in Chapter 99-188 was declared unconstitutional by the Second District Court of Appeal in *Taylor v. State*, 818 So. 2d 544 (Fla. 2d DCA 2002). A review of the record does reflect that Defendant was found guilty of Sexual Battery (Slight Force)(count one), a violation of §794.011(5), Florida Statues. (See Verdict Form, Judgment and Sentence, attached). However, Section 8 of Chapter 99-188 amended §794.011, Florida Statute to accommodate the "repeat sexual batterer" offense. See Chapter 99-188. Laws of Florida.
>
> On March 1, 2002, the Court sentenced him as a prison Releasee Reoffender to fifteen (15) years Florida State Prison with a fifteen (15) year minimum mandatory on count one. (See Judgment and Sentence, attached). Therefore, Defendant was not sentenced under §794.0115, Florida Statues. (See Judgment and Sentence, attached). Consequently, the Second District Court of Appeal's ruling in *Taylor* and the amendment to §794.011, Florida Statutes in Chapter 99-188 do not affect Defendant's conviction and sentence on count one. As such, no relief is warranted upon ground 4.

(Exh 7: April 15, 2004, Order at page 7).

In **GROUND FIFTEEN**, Mathews contends the Department of Corrections letter used to sentence Mathews as a Prison Releasee Reoffender was never submitted the jury during the fact finding process in violation of *Blakely v. Washington*, 542 U.S. 296 (2004). This claim was properly rejected by the state postconviction court because Blakely does

39

not apply retroactively to cases on collateral review. (See Exh 11: October 28, 2004, Order at page 9). The trial court's denial of this claim was correct. *See Varela v. United States,* 400 F.3d 864, 867-68 (11th Cir.) (explaining that *Blakely* and the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), do not apply retroactively to cases on collateral review), *cert. denied*, 546 U.S. 924 (2005); *McCoy v. United States*, 266 F.3d 1245, 1258 (11th Cir. 2001)(*Apprendi* does not apply retroactively on collateral review).

### Analysis

Mathews has failed to show, by clear and convincing evidence, that the state court rejected his ineffective assistance of counsel claims by relying on erroneous facts, or that the state court applied established federal law in a manner that was contrary to or was objectively unreasonable in light of United States Supreme Court precedent.

Accordingly, the Court orders:

That Mathews' petition for writ of habeas corpus is denied. The Clerk is directed to enter judgment against Mathews and to close this case.

### CERTIFICATE OF APPEALABILITY AND
### LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong,"

*Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further, ' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on December 3, 2008.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record
Clarence Mathews